DANIEL M. SULLIVAN, PLAINTIFF IN ERROR, v. THE NORTH HUDSON COUNTY RAILROAD COMPANY, DEFENDANT IN ERROR.

1. A writ of error will lie to review the judgment of a Circuit Court rendered, in pursuance of a statute, upon the verdict of a jury, on appeal from an award of commissioners estimating damages under the power of eminent domain.

2. In determining whether an error, injurious to the plaintiff, has been committed by the trial judge in his charge to the jury, all portions of the charge referring to the point in question must be considered, and if, thereupon, it appears that the rule laid down for the jury was in accordance with the contention of the plaintiff, the judgment will not be reversed.

3. When a corporation had been authorized to construct and operate an elevated cable railroad through a street, on paying to the adjacent landowners the value of the easement or right of passage and the damages, and the railroad to be built was to be not less than thirteen feet above the street, resting on pillars at least thirty feet apart, it was not error to charge the jury, empaneled to appraise the value of the easement.

and to assess the damages, that the value of the easement was nominal or nearly so, but that any hindrance caused by the railroad to those uses of the street which the adjacent owner had a right to make over and above the public, should be considered in determining the value.

In error to the Hudson Circuit Court.

For the plaintiff in error, *Collins & Corbin* and *Wills* and *Gordon.*

This is the first case in this state on the question of the damages to be awarded to an adjoining property owner damaged by the construction of an elevated railroad through the street. In a state full of cities, like New Jersey, elevated railroads are almost certain to be numerous, and it is difficult to exaggerate the importance of a decision settling the rights of adjoining owners in such cases.

The writ of error is taken from a judgment entered in the Hudson Circuit on an appeal from the award of commissioners appointed under the act of March 26th, 1886. *Pamph. L., p.* 126.

I. *The writ will lie.*—A motion has been made to dismiss this writ on the ground that the judgment is not reviewable on error. We think that the decisions leave the question free from doubt. They will be found collected in *Corbin's Rules* 14. It would be strange if a final judgment of the Circuit Court by which title to land is transferred could not be reviewed.

The decisions of other states are clear in our favor on this question. *Tracy* v. *Railroad Co.,* 78 *Ky.* 309; *Wisconsin Central R. R.* v. *Cornell University,* 49 *Wis.* 162; *Milwaukee, &c., R. R.* v. *Strange,* 63 *Wis.* 178, 182; *In re Wells Co. Road,* 7 *Ohio St.* 16; *Hamilton* v. *Catlin,* 19 *Conn.* 520.

II. *The facts.*—The suit was brought to condemn the rights of the appellant in certain land in and abutting on a public street called Oakland avenue, in Jersey City, for use by the defendant as an elevated cable railroad. The main

contention is as to the measure of damages. The plaintiff
alleges error in the rulings of the court by which the jury
were required to set off benefits to land not taken against
damages for the taking.   The plaintiff owned two large
apartment houses on Oakland avenue, worth about fifteen
thousand dollars ($15,000), built up to the street line; defend-
ant wishes to take the right to construct a double track ele-
vated railroad, at least thirteen feet high, supported by pillars
to be set on each side of Oakland avenue.   What are the
damages to the plaintiff?   The jury gave him only $80.

III. *What was the theory of the Circuit Court as to dam-
ages?*—Before considering what the court ought to have ruled
on the question of damages, let us see what was ruled.   The
charge of the court, which was excepted to, refers the jury to
the judge's previous comments.   These comments, therefore,
become important to consider.

At first his Honor said : " There is no provision in this act
as to reducing the damage by any supposed benefits; therefore,
all that is to be excluded.   *   *   *   The question is, what does
this thing detriment the property, and it is not what is the
difference between the property before and the property after.
*   *   *   You take his property here.   Now, you might say
you double a man's property by improvements.   We take
one-half of his property and have doubled the property in
value, therefore, we must not pay him anything.   Did you
ever hear of such a proposition?"   The court next over-
ruled the question whether improved facilities of travel to
New York would benefit the property on the line of the street
because this was an inquiry into general benefits.

Thus far we consider that the rulings of his Honor were cor-
rect, but he abandoned this ground.   A witness was asked
" whether the property would not be worth more if the depot
was located one block off."   The court admitted the question,
and exception was taken.   We think this an erroneous ruling.
A witness for the defendant was asked " What would be the
effect on the property on Oakland avenue of constructing such
an elevated road?" and the court said, " Exclude from that the   .

consideration of the general benefit universal in the neighbor-
hood, confining it to that which would result to property
along that street." This was ruling that the court considered
benefits to property on Oakland avenue to be special and
therefore competent to prove, and a juror thereupon asked a
question, whether it would make property valuable for busi-
ness or for a residence, and was told it would be a benefit for
business purposes along that street. Thus it was impressed
on the jury that the chance that the elevated road would make
Oakland avenue a business street was to be taken into account
as a special benefit. Next, a witness, in face of exception,
was allowed to testify that the elevated road would cause
property to rise on Oakland avenue, basing his judgment on
his experience on Third avenue in New York, and his testi-
mony, as a whole, makes it plain that, in his view, the in-
creased facilities for travel were to give the increased value.
Next, the court said : " There may be an outcome of such a
structure that is general and yet has special advantages in
that locality toward which the inquiry is directed ; it may
have special direction to this street, and that I understand to
be the inquiry here." This same witness, an intelligent one,
admitted that he would regard the structure as a great injury
to Mr. Sullivan's property if no cars were run. Another
witness tells that the road will raise the value of the property,
and, on objection made to such testimony, as showing a gen-
eral benefit, the court said only, " I will instruct the jury on
that subject," and admitted the question. The next witness
testified that the elevated road would increase the value of the
property all along the line of Oakland avenue because, as
population grows, that will become the business street. Other
witnesses were called to say that the road would cause the
land to raise in value on Oakland avenue, and plaintiff's
counsel took a general exception to all this testimony as to
benefits. Almost all the testimony of the defendants was of
this character. Having admitted such testimony, it was
especially incumbent on the court to warn the jury that no
enhancement of the value of this property from increase of

facilities of travel should be considered, but the court only confirmed, by the charge, the error made in the admission of evidence and by the remarks made during the trial. The jury were told to consider the present value of the property "and what will be its value after it is erected and put to such uses as it may legitimately be put to under the grant." This leaves the jury to speculate on the advance of property resulting from improved facilities and to deduct this advance from the compensation which they would otherwise award. In other words, it tells the jury that the benefits will be a part of the compensation for this property taken. · When specially asked to charge on this subject, the court says : "If a man can sell his property for more after than he could before, how can he be injured ? How could he be damaged if the alleged source of harm enures directly to his pecuniary advantage ? But these general and incidental benefits that come to all alike, either on the particular street or outside of it, are not to be regarded in determining the amount of actual injury done." This confirms the previous remarks of the court, indicating that, in the view of the court, if the benefit of improved facilities to the property of the plaintiff on Oakland avenue is greater than the property of some other owners, it is a special benefit which the jury are to consider. We think this is a false principle.

IV. *No deduction for benefits, either general or special, can be allowed under the act in question.*—The authorities in New Jersey are unanimous that in a condemnation proceeding benefits cannot be considered unless the act expressly requires it. In *State v. Miller*, 3 *Zab.* 383, 385, it was claimed that surveyors in laying out a road were bound to take into account the benefit to the landowner. The court said that, as the act was silent on the subject, the surveyors were not bound to deduct the benefits. "The advantage of a public road are common and may be equal to all persons who have occasion to use it, whether their lands are taken for it or not, and therefore there is no reason why the man whose land is occupied by a public highway should be made to contribute more

for the public benefit than his neighbor whose lands are not occupied." In *Williamson* v. *Amwell*, 4 *Dutcher* 270, the court held, that in the absence of authority by statute for assessing benefits from opening a road, they could not be considered. In *Swayze* v. *Midland R. R. Co.*, 7 *Vroom* 295, 299, the court distinguished between those statutes which direct the deduction of special benefits from damages and those which do not, and as the charter then in question did not permit any deduction for benefits, the court set aside the report of the commissioners for allowing such benefits. The same doctrine was affirmed in *State, Swanton* v. *Fritts*, 15 *Vroom* 375. A distinction was attempted to be drawn by counsel at the trial between the case where damages are allowed for the taking of land and where damages are allowed for injuries to land not taken, the argument being, that in the latter case benefits might be taken into account. But this distinction is not sustained by authority, and the cases above cited show that it is not. See, also, *Winona, &c., R. R.* v. *Waldron*, 11 *Minn.* 515, 538. Neither can it be sustained on principle. The fee of the land on which the elevated railroad of defendant is to be erected is in the plaintiff, subject to the easement of the public for a street. The defendant now proposes to take out of this fee another easement for an elevated railroad. This is a taking of property. By this taking the plaintiff will be deprived of light and air and convenience of access, and be subject to the annoyance of the noises of traffic in his houses on the adjoining lots. This also is a taking of property under the rule that any deprivation of the uses of the property is a taking. *Cooley Const. Lim.* 675.

There is another class of cases reaching the same conclusion by another line of argument. Compensation for property taken must be in money and not benefits. This was held in *Carson* v. *Coleman*, 3 *Stock.* 106, and in *Butler* v. *Sewer Commissioners*, 10 *Vroom* 665, 669. In *Brown* v. *Beatty*, 54 *Miss.* 237, 242, in a case of condemnation, the court said: "Manifestly a party whose property has been appropriated to public use in the construction of a railroad cannot be compelled to

receive as compensation the estimated enhancement in the value of his remaining property. The cash value and the actual damages are the true standard by which to determine the compensation to which in such case the property owner is entitled," and the court held unconstitutional a charter requiring a jury to consider the benefits to the owner of locating a railroad on his land. This doctrine has been repeatedly reaffirmed in that state, a late case being *Natchez, &c.*, v. *Currier*, 62 *Miss.* 506, 508. In this principle there is nothing inconsistent with the right to assess for a public street for special benefits, such assessment being referable to the taxing power which may be used appropriately for a public but not for a private corporation.

The legislature very sensibly omitted to provide for any such deductions. The true rule of damages is not, as stated by the court, the difference between the value of the property when taken and its value when enhanced by this structure. What evidence is there of any enhancement whatever except such as may arise from increased facilities of travel? There was no suggestion of any other, and, as this was not a proper matter for consideration, the jury were misled by the instruction to consider the advantages. When the owners of property build along the line of the road they will enhance the traffic, and therefore the value of the railroad, but will the company pay for these benefits? Equally unreasonable will it be to compel the owners of land to pay for the merely prospective benefits of an elevated railroad. The proper rule is that stated in *Sater* v. *Burlington, &c., Company*, 1 *Iowa* 386, 393: "First ascertain the fair market value of the premises over which the proposed improvement is to pass, irrespective of such improvement, and also a like value of the same in the condition in which they will be immediately after the land for the improvements has been taken, irrespective of the benefit which will result from the improvement, and the difference in value will constitute the measure of compensation." This principle was approved in *Harrison* v. *Midland R. R.*, 36 *Iowa* 633; and in *Elizabethtown* v. *Helm*, 8 *Bush* 681, 684, it

is also held that the compensation should exclude any en-hancement in value arising from the proposed road. It will be seen that this rule is quite different from that laid down by the court in this cause, which necessarily leaves to the jury to consider and speculate on the benefits resulting from the construction of the road.

V. *Even if special benefits ought to be allowed, the benefits which the court left the jury to consider were general benefits.*— As we have shown, the plain meaning of the charge was, that the jury should consider whether there was advantage likely to accrue to this property on Oakland avenue over and above the advantages to other property in that vicinity. Any superior advantages evidently are regarded as special and to be taken into account by the jury. Now, it is perfectly clear that any enhancement of value to property, either on or off of Oakland avenue, from this elevated railroad, must rise from increased facilities of travel. There is not the slightest suggestion of benefit from any other cause. If benefits arising from increased facilities in travel are not the proper matter for consideration, then nothing ought to have been submitted to the jury at all on the question of benefits. We regard it as settled by the clear weight of authority, that benefits arising from increased facilities of travel, such as the increase in value from increased population and trade which such facilities bring, are general benefits.

Even where there is a statute allowing benefits to be set off, no such benefits can be considered as were left to the jury in this case. "The amount of benefit which is not allowed to be estimated for the purpose of being deducted from the damages is that which comes from the claimant's sharing in the common convenience of increased public facilities and the general advance in value of real estate in the vicinity by reason thereof." *Arbush* v. *Oakdale*, 28 *Minn.* 61, citing *Allen* v. *Charlestown*, 109 *Mass.* 243, 246. The charge was in direct violation of this principle. The rule laid down by Judge Knapp did not contain the qualification, that the benefits arising from the use of the proposed road should not be de-

ducted from the damages. The judge said : " If a man can sell his property for more after than he could before, how can he be injured?" The error was not corrected by telling the jury, that general and incidental effects coming " to all alike, either on the particular street or outside of it, are not to be regarded." The fair inference from this language, taken in connection with the previous rulings of the court, is that, in the view of the court, there was a distinction to be made between those benefits which should come only to those on Oakland avenue and those benefits which should come alike to those either on or off Oakland avenue.

The true distinction between general and special benefits we find best stated in *Washburn* v. *Milwaukee, &c., R. R.,* 59 *Wis.* 364, 377. The condemnation in that case was under a statute which authorized the allowance of special benefits. The court below had charged the jury as follows : " If there is in this location of the depot ground a benefit to this particular property, that benefit should be set off against the damages to his other property, even though it may also benefit some property immediately surrounding, but not benefit the whole people generally." Commenting on this, Lyon, J., says (*p.* 376) : " We think this is error. The location of a depot at a given point is a general public benefit, although, as in the case of any general benefit created by public improvements, one citizen may be more directly and largely benefited than another. * * * The statute provides only for the allowance of special benefits in such cases, and such is not the character of the benefit under consideration. It would seem that a benefit which may thus be allowed is one which enhances the value of the land affected by it, by improving its physical condition and adaptability for use, such as by reclaiming waste land, by draining or flowing a marsh, by aiding in the development of a water power, by dispensing with the necessity of maintaining fences or by opening a mine or quarry, and the like. We are unable to conceive of any other kind of benefits which are not general benefits as well, and hence outside the statute."

VI. *The court erred in charging that the easement taken was nominal.*—Another error assigned is upon the charge of the court in regard to the interest of the plaintiff in error in the land lying in the street upon which he abuts which the public has not, and the court's refusal to charge that the jury should consider the uses of the streets to which said plaintiff had a right over and above the public.

We contend that this land may be valuable for vaults beneath the surface and for loading and unloading goods, and that there must necessarily be an obstruction of these rights during the progress of the work and thereafter permanently. And that while it is true that certain obstructions of these rights were in contemplation when the street was dedicated, yet the one proposed was not.

This should have been submitted to the jury as a substantial damage. *Mills Em. Dom.*, §§ 56, 206.

For these errors we ask for a reversal.

For the defendant in error, *James B. Vredenburgh* (with whom was *John C. Besson*).

This writ of error brings here for review the trial of an appeal from the award of commissioners appointed under an act entitled "An act to enable street car or horse car railroad companies to provide better accommodation to the public by using what is now known as the cable system for motive power on elevated roads." *Pamph. L.* 1886, *p.* 126.

The defendant in error, a horse railroad company, desiring to take advantage of the provisions of said act to elevate its surface road in Oakland avenue, in Jersey City, and to change it from a horse to a cable road, obtained the written consent of a majority of the abutting property owners on said avenue and of the municipality.

Not being able to obtain the consent of either the plaintiff in error, or a Mr. McBride, it applied for, as provided by said act, and obtained the appointment of commissioners to ascertain the damages, if any, suffered by each.

From the awards of such commissioners each of the plaintiffs in error appealed. When these appeals were tried before the judge of the Circuit Court and a jury of view, they, by consent, were tried together.

The plaintiff in error, dissatisfied with the verdict of the jury, sues out this writ of error, assigning as error the action of the judge at the trial in admitting and rejecting evidence, and in charging and refusing to charge the jury. .

They also attempt thereby to question the authority in law for the original appointment of the commissioners.

This is the *first* error assigned, and is based on the fact that the act, by force of which these proceedings are had, uses the word " hereinbefore," in the eighteenth line of the second page. *Pamph. L.* 1886, *p.* 127.

It is insisted that no way had been in the act previously provided by which the damage of the owners on the street could be first ascertained and paid.

To this error the defendant answers :

I. That the objection comes too late.

The plaintiff in error, after appearing at the appointment of commissioners, and raising no objection to their appointment because of any want of authority in the judge to make such appointment; after appearing before the commissioners in their investigation and raising no objection as to their want of authority, and after appealing to a jury of view and trying the appeal there, without in any way questioning the authority of these proceedings, cannot now question the jurisdiction of the court. It is too late.

II. The jurisdiction of the court in the appointment of commissioners should be attacked by *certiorari*.

III. This is a verbal mistake, which the court will read as it was intended it should be read.

IV. This act is *valid* even if this proviso should be void.

The *second* error assigned is the overruling of the question asked Dr. McBride, as to the effect of certain noises upon persons in the house. Defendant answers that no foundation was laid for the question. At that point of witness' examina--

tion the question should not have been allowed.    At least it clearly was discretionary with the presiding judge.

The *third* error assigned is the admission by the judge of the witness' reason for his testimony that the building of this elevated cable road would be a benefit to the property of the plaintiffs in error.    The defendant's answer is, that this testimony was competent and should have been admitted.    In support of this contention it cites the cases of *Hawkins* v. *City*, 119 *Mass.* 94; *Sawyer* v. *Boston*, 144 *Id.* 470; *McLean* v. *Chicago Railroad*, 67 *Iowa* 568; *Illinois* v. *Van Horn*, 18 *Ill.* 257.

The *fourth* error assigned is the refusal of the judge to charge when requested (except with modifications), that the jury should not deduct from the damages what might be considered a general benefit.

The request of counsel is as follows: "We want to ask your Honor to charge the jury directly, that they cannot deduct from the damages what might be considered a general benefit."

The request is indefinite and uncertain, and, if charged, might mislead the jury, unless explained.    The request comes from the counsel of Sullivan.    Sullivan's property was so situated that it received a peculiar and special benefit from the operation of this road.    His property consisted of a three-story frame tenement house, with a grocery store occupying the first floor, situated on the corner of an intersecting street.

The jury had visited and inspected this property and the proposed structure.

The judge did not refuse to so charge; on the contrary, he said to the jury, "Yes," thereby charging the proposition as requested.    He then said: "I do not consider it necessary to remark at length on the subject.    I have referred to it so frequently during the trial of the cause that the jury must understand my views on this point."

The record shows that the court had ruled on an objection by counsel of the plaintiff in error as follows: "It is in the line of the previous objection and ruling of the court.    I am

quite clear in excluding everything that touches the question of general benefits."

He refers to and made these statements part of his charge.

In 3 *Graham on New Trials* 770, the author says: "It matters not whether the observations addressed to the jury come from the judge during the progress of the cause or not until its termination; there being no absolute rule compelling him to reserve what he has to say until the final summing up."

Is not a request to charge completely answered if, in fact, the judge has clearly informed the jury what the law involved in the request is, so that no doubt can reasonably remain in the jury's mind? 2 *Thomp. Trials*, § 2352. Must the judge reiterate the law as often as requested?

There could have been no misunderstanding by the jury of the views of the court. The request was as to the deduction from the *damages.* The court had already charged that compensation must be made for the easement. No deductions for special benefits were to be made from that compensation. The request was directed towards, and the court, in its answer to the request, was dealing with, the damages, taken alone.

The judge, having these facts in mind, and having over and over again during the trial stated that general benefits could not be deducted from damages, adds: "When a structure of this sort confers a general benefit on the property. in the vicinity    *    *    *    that consideration of incidental benefit is not to be regarded, because all alike are entitled to that general benefit. But that does not exclude from consideration those direct advantages which are inseparable from the circumstances which produce the particular injury. As it is *conceded by counsel,* if the effect of this structure in the street is immediately and directly to enhance the value of the particular property in the market, why, of course, there cannot be any substantial damage."

If the counsel did so concede, can the same counsel now ask that the verdict be set aside because his admission was a

mistake?  If it be conceded that, under the circumstances as stated by the judge and then conceded by counsel of plaintiffs in error, no substantial damage existed, was not this jury of view to determine that?

And again the judge charges: "But these general and incidental effects that come to all alike, either on this particular street or outside of it, are not to be regarded in determining the amount of actual injury."

Before considering this assignment, the defendant in error calls the attention of the court to the act.  It insists that the legislature could constitutionally authorize the structure in question in the street without the payment of damages to any one.  The structure was the use of the street for a purpose for which the street had been dedicated.

The statute limits the corporations which can take advantage of it to an existing street car company.  It states its object to be to afford more rapid and comfortable means of transporting passengers than is possible on a surface road.  Nothing can be erected in the street, under this act, except such a structure as shall be appropriate solely for cars drawn by a wire rope or cable, which cable is to be kept in motion by a stationary steam power, which steam power is to be located beyond the limits of any street or public highway.  The structure shall be on posts or pillars so placed as not to interfere with the ordinary public travel on such street, except to such an extent as may be unavoidable.

Nothing can be used on this cable road which would give rise to smoke, gases, noises, heat, cinders or any of those discomforts which are so prominently mentioned in the suits involving the elevated steam railroad in the city of New York. In fact, the road permitted to be built by this act differs from the elevated railroad in the city of New York as much as a horse street railway differs from the ordinary steam railroad.

If the use of the street by a horse or cable street railroad is a use of it for which the street was originally dedicated, then the structure authorized by this act, and the use of it in the

manner authorized by this act, is also a use of the street for the purpose for which it was dedicated.

The growth of a road from its beginning as a trail to a thoroughfare of a populous city is the continual addition of uses, most of which were not thought of by those who dedicated it. The growth of population near it, makes necessary or convenient the use of the street for these various additional purposes.

The object for which the road is laid is the passage of persons over the surface. Yet, it is held that the use of the street for the purposes of building sewers, water pipes and gas pipes underneath it, or the erection of poles and wires for conducting electricity above it, or rails on the surface for street railroads and the use of cars thereon, are uses for which the road was originally dedicated.

The necessity for speed and comfort has in times past caused the wagon to be substituted for the saddle, the street car for the omnibus, and this same necessity now requires that the street car should be elevated above the surface of the street. This necessity caused elevated roads of a different character to be built in the cities of New York and Brooklyn. The rapid growth of these cities in the direction of these elevated tracks proves, conclusively, that they are a necessity to the growth of a city such as Jersey City is.

Streets are opened to give access to adjacent property. They are paved and surface railways are operated therein to add to this accessibility. The elevated street railroad adds more to this accessibility than either the paving or the operation of a surface railway. It does not interfere with the use of the street for other purposes.

In the case of *The Morris and Essex Railroad* v. *The City of Newark*, 2 *Stock.* 357, Chancellor Williamson says : "As to public highways which it was absolutely necessary the company should occupy in the construction of their railroad, the legislature made no provision for the company's acquiring any title in them. The legislature had the power to authorize the company to occupy public highways, either longitudinally or

otherwise, either with or without compensation. The use of the public highways belonged to the public, although, technically, the fee to the land remains in the original owner and his assigns. They have not been dedicated to a particular mode of travel or use. They are intended and are devoted to public conveniences and to the profit and pleasure of the public as thoroughfares, as a means of facilitating intercourse in matters of business or pleasure between one city and town and another, or between one man's dwelling house and farm and another; it is perfectly consistent with the purposes for which they were originally dedicated and intended that the public authorities, who have the control of them as public highways, should adapt them in their use to the conveniences and improvements of the age."

What is to be paid to the abutting owners on the street in which this structure is erected depends, then, on this statute entirely.

The wording of this statute is, that " no elevated railroad shall be constructed unless all damages, *if any*, done to property fronting on such streets, the owners of which have not given their consent, be first ascertained and paid." It is clear, from this language, that the legislature intended that the benefits, if any, received by abutting owners, should be deducted from the damages, because they say "*the damages, if any*." Every owner on the street must suffer some damage. He could only be without damage if the benefits which he received equaled or exceeded the damages. In such a case only it may be truly said that he suffered no damage.

The defendant insists that the intention of the legislature, as indicated by the language used, is, that if the building of the road should result in making the property of abutting owners of less value than it was before the road was built, the corporation building the road was to pay them this difference. The damage intended by the act was the difference between the value of the property before the road was built and the value of the property after it was built. But if the use of the street by this structure is not such a use as the street was

originally dedicated for, still, under the act in question, the defendant in error should pay to abutting owners the value of the interest in the land taken and such additional sum as would represent the damages actually suffered.

Is it true that, when part of a tract of land is taken by eminent domain, the rule which prevents the jury from setting off general benefits does not exclude from their consideration direct advantages inseparable from the circumstances creating the injury? The plaintiff in error insists, in this and the other assignments of error, that such instructions were erroneous. The defendant insists that these instructions were at least as favorable for plaintiff as the law would justify. In this state there are no cases directly in point in the Court of Errors. In the Supreme Court, *State* v. *Miller*, 3 *Zab.* 383; *Williamson* v. *East Amwell*, 4 *Dutcher* 272; *Swayze* v. *New Jersey Midland R. R.*, 7 *Vroom* 395, deal with the question of general benefits as set off against the value of the land actually taken.

In the last case Scudder, J., says : " It is true that the general definitions which have been given to the term 'damages ' in the proceedings for condemnation of lands by municipalities and railroad companies, questions have arisen and differences of opinion are expressed as to whether this term includes an offset of benefits to remaining property which are common to the owner of land taken and others in the same locality, or those which are special and peculiar to such owner. * * * We have no clause excluding benefits in the consideration of the compensation to be made. What, therefore, is a just compensation, is left for the legislative enactment or judicial determination." And he refers to the act of March 22d, 1860, concerning public roads, the first section of which enacts that, thereafter the surveyors should assess the owner's damages over and above the advantage that will, in their judgment, accrue to such owner, and says : " This would seem to be the more just and equitable method of estimating the damages the landowners will sustain by allowing such as are above the special and peculiar benefits he will receive, and it is difficult

to see why he should have any more; it is the measure of his actual loss or injury." In these remarks he is dealing entirely with the question, whether the special benefits shall be set off against the value of the land actually taken.

In *Lowery* v. *The City of Newark*, 4 *Vroom* 155, the Supreme Court says, referring to the case of *Carson* v. *Coleman*, 3 *Stock.* 106 : " The question whether peculiar benefits derived by the owner from the improvement in respect of which he may lawfully be compelled to contribute towards the payment of the cost and expense, may not be regarded as the equivalent for money, was not involved in that case." And in that case it was held that it was constitutional to make the owner pay for the said benefits received by the portion of land not taken for the improvement. And in *Baldwin* v. *The City of Newark*, 9 *Vroom* 158, the same doctrine is sustained.

In the case of *Henderson* v. *The City of Orange*, 9 *N. J. L. J.* 72, in charging the jury on the appeal from the comissioners, assessing the damages sustained by the plaintiff by reason of the taking of his water rights, Justice Depue said : " In all such cases the law adopts as the measure of compensation the market value of the property taken, where the whole of the property is taken, and where, as in this case, part only is taken, then the proposition to be passed upon by the jury is the inquiry as to what was the fair market value of the property before the part was taken, and its fair market value after the taking, that is, the difference between the value of the property before the taking and the value of what is left after the taking." And again : "And in the determination of market values before and after the taking we are to be guided by the consideration as to what the property would, in your judgment, have brought in the market, as between an owner willing to sell and a purchaser willing to buy."

In other states similar instructions have been held to be correct. In *Trinity College* v. *City of Hartford*, 32 *Conn.* 478, the court said : " But the rule has long been settled in this state, not only in practice, but by repeated decisions of this court, that where a landowner has a claim for damages for

land taken, and has received local and special benefits equal to the damage, the value of the benefits shall be set off against the damage, and he shall be allowed nothing.    It is true, that his entire benefit may be exhausted in this application, while the benefits received by his neighbor are assessed only a small percentage, and thus there may be a seeming and perhaps a real inequality, but so long as his benefit equals his damage, he cannot be said to have suffered by the laying out of the road, and there would be an injustice in compelling others to pay him for damage that really has no existence."

In the case of *Nicholson* v. *New York and New Haven R. R. Co.*, 2 *Conn.* 79, the court had instructed the jury that, in the assessment of damages, the jury should allow the defendants not any general benefits to the city and citizens at·large, but the local, personal and particular advantage to the plaintiff's premises, occurring in the construction and use of the railroad and embankments upon the same.    And these instructions were sustained by the court as proper.

In *Cross* v. *County of Plymouth*, 125 *Mass.* 557, upon the trial to assess damages for lands taken to widen a street, the jury were instructed, " the benefits to be deducted must be a benefit which is direct and special to the estate of the peti- tioner, and not a general benefit shared by his estate in com- mon· with other estates in the vicinity, and in common with other estates abutting upon the same street, no part of which has been taken for the widening, and this benefit may be direct and special, although other estates upon the same street, similarly situated, were similarly benefited."    These instruc- tions were held not to be erroneous.    *Whitman* v. *Boston and Maine R. R.*, 7 *Allen* 315.

These rulings were substantially approved.    Kansas, *Rob- erts* v. *Commissioners of Brown County*, 21 *Kan.* 247.    Maine, *Bangor Railway* v. *McComb*, 60 *Me.* 270.    Minnesota, *County* v. *St. Paul R. R.*, 28 *Minn.* 503.    Missouri, *Wells* v. *Chicago*, 19 *Mo. App.* 127.    New Hampshire, *Aden* v. *Railroad*, 55 *N. H.* 127.    *Dougherty* v. *Brown*, 91 *Mo.* 26.    North Carolina, *Raleigh* v. *Wicker*, 74 *N. C.* 225.    Kentucky, *Elizabethtown*

*R. R.* v. *Helm*, 8 *Bush* 881. Illinois, *Page* v. *Chicago, Milwaukee and St. Paul R. R. Cō.*, 70 *Ill.* 325.

" The true measure of compensation for land not taken by a railroad company for a right of way, is the difference between what the whole property would have sold for unaffected by the railroad, and what it would sell for as affected by it, if it would sell for less. The damages must be for the actual diminution of the market value of the land, and not speculative. This is not deducting the benefits or advantages from damages, but it is ascertaining whether there be damage or not. It is but the estimation of damages, and it seems the only fair and just method to estimate them."

Pennsylvania, *Pittsburgh R. R. Co.* v. *Roberson*, 95 *Pa. St.* 426, the court say : " Considering only the advantages and disadvantages, special and peculiar, resulting to the plaintiff's property, by reason of the introduction of the defendant's road upon it, what was the difference in its value in the real estate market before and after building the road ? The resolution of this question solves the proposed problem. * * * It, hence, follows, that while the general advantage, resulting as well to the public as to the property which is subject to assessment, is not to be considered in estimating the benefits to that property, yet any and everything connected with the general improvement, which tends to increase its value or usefulness to such property, may be considered."

In *Schuylkill Nav. Co.* v. *Thoburn*, 7 *Serg. & R.* 421, Chief Justice Gibson says : " The jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded. They are to value the injury to the *property*, without reference to the person of the owner, or the actual state of his business, and in doing that, the only safe way is to inquire what would the property, unaffected by the obstruction, have sold for at the time the injury was committed ; what would it have sold for as affected by the injury. The difference is the true measure of compensation."

In *Hornstein* v. *Atlantic and Pacific R. R. Co.*, 51 *Pa. St.* 90, the court says : " If judicial authority can fix any rule, the series of adjudged cases, from *Thoburn's Case* down to *Harvey's Case*, 11 *Wright* 434, has established the measure of damages for building a railroad through a man's land to be the difference betwixt the value of the land before the road was built and its value after the road is finished. In estimating the disadvantages resulting from the road, consequential or speculative damages are to be rejected ; and in estimating the advantages, such only as are special and peculiar to the property in question are to be considered, and not such as are common to the public. It is the business of the viewers in the first instance, and, on appeal, of the jury, to balance the advantages that are special against the disadvantages that are actual, and with the aid of whatever testimony is laid before them, to find out as well as they can how much less the land would fetch in market by reason of the road, and that sum which will represent what has really been taken away from the owner, should be given back in damages."

The *fifth* error assigned, the refusal to charge as requested by Mr. Wills, is not true in fact.

The *sixth* error is the judge's charge as to the value of the easement. If the legislature could grant this easement on a street without consideration, then it has done so, and the charge is too favorable to the plaintiff in error. If the legislature could not, then the charge is in the language of the Court of Errors in *Hoboken* v. *Hoboken L. and I. Co.*, 7 *Vroom* 540, 551 ; *Morris and Essex R. R. Co.* v. *Newark, supra.*

The *seventh* and *eighth* errors assigned deal with the proper measure of damage, which has been already discussed.

The *ninth* error assigned is based on the language of the act as to cost. The defendant insists that this language was only intended to apply to an abandonment of the improvement.

The opinion of the court was delivered by

DIXON, J. Under "An act to enable street car or horse railroad companies to provide better accommodation to the

public by using what is now known as the cable system for motive power on elevated railroads," approved March 26th, 1886 (*Pamph L., p.* 126), the North Hudson County Railroad Company obtained the appointment of commissioners to examine and appraise the easement and right of passage over Oakland avenue, Jersey City, in front of two city lots, with apartment houses erected thereon, situate on the westerly side of said avenue, and belonging to the plaintiff in error. The railroad to be constructed was to be elevated at least thirteen feet in the clear above the street, to be supported by pillars set on each side of the avenue, not less than thirty feet apart longitudinally, and to have double tracks, over which passenger cars were to be drawn by a wire cable, put and kept in motion by stationary steam power located near the intersection of Palisade and Ravine avenues.

The commissioners appraised the value of the easement and right of passage at $25, and assessed the damages of the plaintiff at $20. The plaintiff thereupon appealed to the Circuit Court of Hudson county, where an issue was framed, a jury trial had, a verdict rendered for a somewhat larger aggregate of value and damages, and a judgment entered therefor, with costs, in favor of the plaintiff.

To review questions of law decided during that trial, the plaintiff has sued out the present writ of error. The defendant moves to dismiss the writ, on the ground that it will not lie in such a case.

Our constitution (art. VI., § 5, ¶ 3) declares "that final judgments in any Circuit Court may be brought by writ of error into the Supreme Court, or directly into the Court of Errors and Appeals." The statute already mentioned requires the Circuit Court to enter judgment on the verdict of the jury and to award execution thereon; the judgment so entered is therefore final. It follows, from the very words of the constitution, that the writ of error was lawfully issued.

The same conclusion must be reached from previous decisions in this court. A writ of error will run from this court to the Supreme or Circuit Court to bring up any decision

therein which is final, in the nature of a final judgment, and which has not proceeded from a matter resting in discretion. *Eames* v. *Stiles*, 2 *Vroom* 490; *Adams* v. *Disston*, 15 *Id.* 662.

We proceed, then, to consider the alleged errors:

The assignments of error mainly relied on by the plaintiff relate to the rulings of the court touching the measure of damages, the plaintiff contending that the jury were required to set off benefits to land not taken against the damages arising from the taking.

The benefits which may accrue to a landowner, by reason of the construction and operation of a railroad across his land, are usually regarded as consisting of two classes: general benefits, being those which affect the whole community or neighborhood, by increasing the facility of transportation, attracting population, and the like; and special benefits, being those which directly increase the value of the particular tract crossed, as if a cut required by the railroad should drain a swamp, or a necessary embankment should maintain a mill pond, or if a bridge, which the railroad company had to build, should afford a better way between portions of the tract.

Of special benefits, there are none in the present case. No advantage could possibly enure to the property of the plaintiff from the construction and operation of this railroad, which would not in greater or less degree be enjoyed by the entire neighborhood. The plaintiff's counsel, in their brief, justly say: "It is perfectly clear that any enhancement of value to property either on or off Oakland avenue, from this elevated railroad, must arise from increased facilities of travel. There is not the slightest suggestion of benefit from any other cause."

The first question for decision, then, is, whether it is true that the judge instructed the jury to set off general benefits against the damages.

The matter of benefits arose early in the trial, when counsel for the company was cross-examining a witness of the plaintiff, with the view of showing that the elevated road rendered the street safer for children than an existing surface railroad. On objection, the judge excluded the inquiry,

saying: "The rule undoubtedly is, that general benefits are not to be considered. * * * I have no doubt that the general benefit has to be eliminated." Afterwards the defendant's counsel proposed to ask one of plaintiff's witnesses, whether increased facilities of travel would not benefit the plaintiff's property, and on objection, the judge said: "It is in the line of the previous objection and ruling of the court. I am quite clear in excluding everything that touches the question of general benefits." On defendant's counsel asking, "Do I understand your Honor to mean to the property right on the line of the street where it goes through?" The judge replied, "Yes; anything that rises from the general benefit is not to be counted in this investigation." Subsequently several questions were put to the defendant's witnesses for the purpose of presenting the character and extent of the general benefits resulting from elevated roads, and they were over-ruled. Then, at the close of the evidence, the court charged the jury as to the nature of the easement they were to value, and the injuries for which they were to assess damages, without mentioning benefits; but, when the plaintiff's counsel requested the judge to charge the jury directly that they could not deduct from the damages what might be considered a general benefit, he replied, "Yes; I do not consider it necessary to remark at length on the subject. I have referred to it so frequently during the trial of the cause that the jury must understand my views on the subject. It is about this: Where a structure of this sort incidentally confers a general benefit on the property in the vicinity, and you are to estimate the damage done to one who is specially affected by it, that consideration of incidental benefit is not to be regarded, * * * these general and incidental benefits that come to all alike, either on the particular street or outside of it, are not to be regarded in determining the amount of actual injury done."

These statements of the law are clear beyond mistake, and accord with the rule for which the plaintiff in error contends.

But he insists that their force was destroyed by other utter-ances of the judge during the trial.

Several of these expressions, used while the testimony was being taken, indicate that the judge had in mind the possi-bility of there being some advantage resulting to property along the line of Oakland avenue distinct from the general benefit; but the evident purpose of his words was to confine the attention of counsel and witnesses to the inquiry, whether such particular benefit could arise, and they could not have led the jury to believe that advantages of that nature were really shown.    It also appears upon the record that, in answer to questions as to the effect of the railroad on the value of the plaintiff's property, the defendant's witnesses generally dilated on the growth of population and business which attended such improvements.    But, the questions being in themselves legal, it was impracticable to restrain these excursions of the witnesses, and so the understanding was reached, as is made evident by a remark of plaintiff's counsel placed in the bill of exceptions, that in the charge the court would draw the distinction between general and special benefits.    That under-standing having been carried out, we should assume that the jury disregarded the testimony as to general benefits which had been given in spite of the judge's effort to exclude it. Lastly, some expressions in the charge are cited as tending to confuse the jury on the subject of general benefits.    The jury were told that they should consider the substantial injury to the value of the property, and that a fair measure of the damage was the difference between the value of the property, irrespective of the structure and the proposition to erect it, and its value after the structure was erected and put to legiti-mate use.    Standing alone, this portion of the charge would have required the jury to deduct general benefits.    But the whole charge must be looked at, and so regarded, it was right. With the explicit direction to exclude from view the general benefits, it was not erroneous to instruct the jury that the de-preciation in market value, to be caused by the construction and operation of the railroad, would fairly represent the dam-

ages. With the same context must be interpreted the hypothetical questions of the judge : " If a man can sell his property for more after than before, how can he be injured ? How can he be damaged, if the alleged source of harm enures directly to his pecuniary advantage?" The sentence immediately following (" But these general and incidental effects that come to all alike, either on the particular street or outside of it, are not to be regarded in determining the amount of actual injury done ") makes the meaning plain. .

From the whole charge, we think the jury must have understood that the general benefits should be kept out of view, and, no special benefits having been shown, they must have estimated simply the plaintiff's injury. Consequently, we find no error upon this point.

The remaining exceptions discussed are based upon the instructions of the court touching the value of the easement taken by the company. The judge charged as follows : " With respect to lands over which streets have been laid, the ownership for all substantial purposes is in the public ; nothing remains in the original proprietor but the naked fee, which, on the assertion of the public right, is divested of all beneficial interest. Now, it would seem, if that be true, that the value of that easement which a road shall take must be nominal, or very nearly so ; what you take from him, that you pay him for, that value and nothing more." Being afterwards asked to charge " that if the jury believe it is to become a business street, they must consider the uses to which owners have a right to put the street over and above the public," he said : "Any hindrance caused by the railroad in the uses of the property that affect its value, will be matter of consideration in determining the damage."

The first statement above quoted is an extract from the opinion of this court in *The Hoboken Land and Improvement Co.* v. *The Mayor, &c., of Hoboken*, 7 *Vroom* 540, 551. With the sentences added by the judge below, it was not improperly applied to the present case. Aside from the damage to the .adjacent buildings and lots, the value to the landowner of the

right of way taken by the company must be nominal, or nearly so. The height of the railroad was to be thirteen feet at least in the clear, and the pillars on which it was to rest were to be not less than thirty feet apart, so that there could be but two—there might be but one—on the plaintiff's part of the street. By such a structure, the owner's peculiar use of the land in the street, either for vaults beneath the surface, or for loading and unloading goods, would scarcely be appreciably lessened; but if any such hindrance could be caused, the final charge of the judge required the jury to estimate it. His language, as we read it, embraced all of the request made by the plaintiff on this point.

We are not satisfied that there is any error in the record, and the judgment should be affirmed.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH, WHITAKER. 15.

*For reversal*—None.