ELIZABETH L. FITZ *vs.* NANTASKET BEACH RAILROAD
COMPANY.

Plymouth.    October 16, 1888. — November 28, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Taking of Land by Railroad — Damages — Right of Way — View by Jury.*

At the trial of a petition for the assessment of damages caused by the taking of a
strip of land by a railroad corporation, on the issue as to how far a right of way
appurtenant to the petitioner's land affected its value, there was evidence that
the right of way consisted of an ancient cartway through gates and bars from
a highway over intervening land to the petitioner's land, which had no building
on it and was used as pasturage. The presiding judge refused to give an
instruction to the jury, based upon the assumption, of which there was no evi-
dence, that the way was restricted in its use to the passage of cattle to and
from the pasture and to uses incident thereto, and ruled in substance that the
way would remain appurtenant to any parcels into which the petitioner might
divide his land, leaving to the jury, who viewed the premises, to determine the
particular uses to which the way might be put, and the restrictions upon its use.
*Held*, that the respondent had no ground of exception.

PETITION to the Superior Court, for a jury to assess the dam-
ages caused by the taking by the respondent of land of the
petitioner in Hull.    Trial before *Staples*, J., who allowed a bill
of exceptions, which, so far as material, was as follows.

On the issue as to how far a right of way appurtenant to the
petitioner's land affected its value, there was evidence that the
land taken was a strip through a large tract of land owned by
the petitioner, and known as the " Loud pasture"; that there
was no building on the entire tract, and the only income which
had been derived from the land was from letting it for pasturage
purposes; that the tract did not abut on any highway, and that
the only access to it from the highway was by means of a cart-
way, through gates and bars, over the land of one Stearns, who
owned the fee of such way.    Stearns, who was called as a wit-
ness by the petitioner, testified that the way which led through
a gate from the highway was an ancient cartway, — a right to
cross his land.    The husband of the petitioner testified that it
was an ancient right of passage over the land of Stearns by
prescription, that his wife had a right to it, and that it was an

inherent right in the land. The above evidence was not contradicted, and the jury viewed the premises.

The respondent asked the judge to instruct the jury, that, " If the private way leading from this highway to the land of the petitioner, over the land of Stearns, had been through gates and bars, and for the passage of cattle to and from the pasture, and for such incidental uses only as would belong to a way leading to and from a pasture, then, if the character of the Fitz land changes from a pasture to building lots, the right to use that way as an open way, by occupants .of cottages erected on that land, would not be included in the rights of way as now existing."

The judge refused to give this instruction, saying: " It states to my mind a hypothetical case, upon which the court is not called upon to express any opinion. I do not think that the effect of the evidence is that it was a way for the passage of cattle to and from the pasture, and such incidental uses only as belong to a way leading to or from a pasture."

The judge then instructed the jury, that it was for them to take this right of way as it appeared in evidence, and give it the effect, as an outlet from the petitioner's land, to which it was entitled ; that they were to consider the evidence in relation to it, and determine to what extent it could be used, and how its use was restricted, by the terms of its existence ; that the right was appurtenant to the whole land, and every one who might own any part of it would have the right to the way for the purpose for which it might be used ; that " it would be as available, if a man had a cottage-house there, for him to use it as a cartway, and for the purposes for which it is now used, as if he still had a pasture there "; that the continued existence of the way did not depend upon the land remaining pasture land ; that if the land should change from pasture land to cultivated land, or to land used for cottages, it " must still be used under the same restrictions that now appertain to it, that the way must be used conformably to the character which it now bears, and I so instruct the jury, and leave them to say, upon their view of the way and upon the evidence in the case, what the use is and what the restrictions are "; and that, if a great many cottages should be built upon the petitioner's land, " each one of

them would have the right to use the way as an ancient passage-way and as a cartway, just as the evidence characterized it and indicates it to be."

There was also evidence that the petitioner's land was divided by the taking into two unequal parcels, and that no right of crossing the strip taken between these two parcels was reserved or had been secured by the respondent to the petitioner; and the judge refused to rule, as requested by the respondent, that the jury might take into account, in estimating the petitioner's damages, the fact that at some time in the future a highway might be laid out across the railroad.

The jury returned a verdict for the petitioner; and the respondent alleged exceptions.

*J. O. Burdett & R. O. Harris*, for the respondent.

*A. French*, for the petitioner.

W. ALLEN, J.   The first question relates to the effect upon the value of the petitioner's land of the right of way appurtenant to it.   It is admitted by the respondent, that the right could remain appurtenant to any lots into which the land might be divided.   The instruction that the way "must still be used under the same restrictions that now appertain to it, that the way must be used conformably to the character which it now bears, and I so instruct the jury, and leave them to say, upon their view of the way and upon the evidence in the case, what the use is and what the restrictions are," cannot be objected to. The objection is to the refusal of the judge to give the instruction prayed for, that if the way had been "through gates and bars, and for the passage of cattle to and from the pasture, and for such incidental uses only as would belong to a way leading to and from a pasture, then, if the character of the Fitz land changes from a pasture to building lots, the right to use that way as an open way, by occupants of cottages erected on that land, would not be included in the rights of way as now existing"; and to the instructions given, that the continued existence of the way does "not depend upon the land remaining pasture land"; that "it would be as available, if a man had a cottage-house there, for him to use it as a cartway, and for the purposes for which it is now used, as if he still had a pasture there"; and with reference to any number of cottages which might be built

upon the land, that "each one of them would have the right to use the way as an ancient passageway and as a cartway, just as the evidence characterized it and indicates it to be."

The evidence was, that the land was separated from the highway by land of one Stearns, over which was a right of way by prescription appurtenant to the petitioner's land, which the exceptions state was a "cartway through gates and bars." Stearns was a witness, and testified that the way, which was through a gate at the highway, was "an ancient cartway, — a right to cross his land." The husband of the petitioner was a witness, and testified that it was "an ancient right of passage over the land of Stearns by prescription, that his wife had a right to it, and that it was an inherent right in the land." There was no evidence to contradict this evidence as to the way. It appeared that the land was known as the "Loud pasture"; that there was no building upon it; and that the only income which had been derived from it was rent paid from time to time by persons who had hired it for pasturage purposes. A view of the premises was had by the jury. However correct the instruction asked for by the respondent may be, as matter of law, it was not applicable to the evidence. It does not appear that there was any evidence of the particular use that had been made of the way, or that the use had been restricted to driving cattle to and from pasture; on the contrary, it is expressly stated that there was nothing to contradict the testimony that it was a cartway, and a right of passage over the land. The court did not designate the particular uses which had been and might be made of the way, or prescribe the restrictions upon its use; it carefully left these to the jury, and only in effect ruled that the way which the uncontradicted evidence showed to be appurtenant to the land would remain appurtenant to the parcels into which it might be divided. We think that this ruling, and the instructions given in accordance with it, were correct.

The objection to the instructions, that the jury, in estimating damages, should not consider the probability or possibility that a highway would be laid out over the railroad, was not insisted on.     *Exceptions overruled.*