ALFRED I. HARTSHORN *et al.*

*v.*

THE ILLINOIS VALLEY RAILWAY COMPANY.

*Opinion filed June 23, 1905—Rehearing denied October 5, 1905.*

1. EMINENT DOMAIN—*each party entitled to show value for the use to which he thinks the land best adapted.* In a proceeding to condemn a right of way each party is entitled to show the value of the land for the best use to which he thinks it adapted, it being the province of the jury to determine from all the evidence, including an inspection of the land, the best use to which the land is adapted and the fair cash market value for that use.

2. SAME—*what proof is competent on question of damages to lands not taken.* In determining whether land not actually taken for a railroad right of way will be damaged with respect to its use for factory sites, the land being located at a distance from any populous center, the jury may consider the questions of freight accommodation and transportation for employees and the fact that a line of electric railroad is being operated over the land condemned, which, in the opinion of petitioner's witnesses, benefit the land for its use as factory sites, although they are unable to estimate the benefit in dollars and cents.

3. SAME—*when plat of a subdivision is properly admitted.* A plat of a subdivision of agricultural land, filed for record the same day a petition to condemn right of way through the land was filed, which plat shows the location of the line of railroad, is admissible in evidence as tending to show the land will be increased in value by the building of the railroad, even though the defendant amends his cross-petition for damages by eliminating the subdivided land, whereupon the petitioner amends its petition by alleging that the subdivided land was one entire, compact tract used for agricultural purposes, together with other lands for which damages were sought.

4. SAME—*what competent on question of damages for deprivation of switch-track connections.* Where the defendant in a proceeding to condemn a right of way, in support of his contention that the land not taken will be deprived of switch-track connections with a certain railroad, offers in evidence a letter from the railroad officials stating that it would be too dangerous to connect a switch track with the main line less than three thousand feet from a certain point, the petitioner may show in rebuttal that a switch track at the same place, connecting with the main line at a much less distance than three thousand feet, had been put in and used some years before and could be put there again.

5. SAME—*condemnation proceeding in vacation is a proceeding in court.* A condemnation proceeding, whether in term time or before a judge in vacation, is a proceeding in court, since a judge, when discharging his official functions, is the court in a concrete form and has no judicial power outside of the court in which he officiates.

6. SAME—*effect where judge to whom petition was presented in vacation cannot preside at hearing.* If a judge to whom a condemnation petition was presented in vacation and who ordered the venire is unable to preside at the trial another judge of the circuit may preside.

7. SAME—*correct practice where challenge to array is sustained.* Upon sustaining a challenge to the array, at the hearing of a condemnation case in vacation, it is proper practice for the court to order a new venire in the same manner as the first was ordered.

8. APPEALS AND ERRORS—*overruling challenge to array must be prejudicial to reverse.* Overruling a challenge to the array is not ground for reversal unless it appears that some substantial right was thereby impaired, particularly where, in the selection of the jury, the party appealing used but half his peremptory challenges.

9. SAME—*when amount of verdict in condemnation will not be disturbed.* The amount of the verdict awarded in a condemnation proceeding by a jury which viewed the premises will not be disturbed, where it is substantially in accordance with the weight of the testimony.

APPEAL from the Circuit Court of LaSalle county; the Hon. R. M. SKINNER, Judge, presiding.

The appellee, the Illinois Valley Railway Company, filed its petition in the circuit court of LaSalle county, against appellants, to condemn a right of way across the north-west quarter and a part of the south-west quarter of section 13, in LaSalle township, in said county, for a proposed line of railway extending from Princeton, in Bureau county, to Joliet, in Will county.

The origin of this controversy was a condemnation suit between the Illinois Valley Traction Company and appellants, which was decided by this court and reported in 210 Ill. 609. The traction company was organized under the general corporation laws of the State, and we held that, under the facts

shown in that case, it could not exercise the right of eminent domain. After that opinion was filed the appellee, the Illinois Valley Railway Company, was organized under the Railroad act as a railroad company, and this condemnation suit was commenced to acquire the right of way across the same lands which the traction company had sought to condemn in its former proceeding. The traction company conveyed, by deed, its line of railway and appurtenances to the appellee. Appellant Hartshorn for many years had owned the south half of section 12, on the south-east quarter of which are located veins of lime rock suitable for the manufacture of natural cement. It is claimed that this cement could not be utilized on account of the lack of shipping facilities, and that Hartshorn purchased a part of the north-west quarter of section 13 lying north of the right of way of the Rock Island Railway Company. A ravine called "Swanson's ravine" extended north and south across this tract, dividing it into two parts. Located on the part west of Swanson's ravine, it is claimed, are deposits of rock used in the manufacture of Portland cement, and on the part lying east of the ravine are deposits of shale and fire clay used for the manufacture of brick. On February 28, 1903, Hartshorn sold and conveyed to the appellant the Garden City Sand Company that portion of the north-west quarter of section 13 lying east of the ravine, reserving to himself a right of way from the south-east quarter of section 12 across the tract sold to the sand company. The appellant sand company is a corporation organized for the manufacture and sale of brick, lime, cement and other building materials. The land sought to be taken in this proceeding is a strip fifty feet wide extending across the lands of appellants in a north-easterly direction, immediately north and parallel with the right of way of the Rock Island Railway Company. Immediately north of the right of way of said railway company, on the lands of appellants in section 13, is a narrow strip of land of irregular shape which is practically on a level with the tracks of said

railway, said piece being in the form of a triangle, and having a width varying from nothing to one hundred and forty feet.  From all sides of this small level strip of land north of the Rock Island right of way the land rises in bluffs, from the top of which it extends on a rough elevation.  The right of way sought to be condemned takes fifty feet off of the south end of this level land, and lies between the remaining portion and the Rock Island tracks, leaving a level strip about ninety feet wide.  The traction company, after it procured its judgment in the previous case, proceeded to construct its railway across this strip of land, erecting poles, wires, rails, ties and other appliances for the operation of an electric railway, and proceeded to operate its cars.  In the case at bar appellants claim these improvements as a part of the real estate, and the trial court so held.

The appellants filed separate cross-petitions claiming damages to the property not taken, on the ground that the taking of the strip in question did not leave sufficient room upon which to erect factory plants, and for the further reason that they were deprived of switching privileges and connections with the Rock Island tracks, hence the remainder of the land was destroyed for manufacturing purposes.  Close to the east end of the sand company's land the north track of the Rock Island road passed through a long tunnel, cut through a solid rock in the bluff, and through this tunnel ran all of the west-bound trains.

The jury fixed the value of the lands actually taken from Hartshorn at $2200 and all the lands actually taken from the sand company at $1200, and allowed no damages to the lands not taken.  Judgment was entered upon the verdict, to reverse which this appeal is prosecuted.

FULLERTON & ELDREDGE, for appellants:

Special benefits are such as affect the market value of the land and such as are capable of measurement and computation.  *Railroad Co.* v. *Stickney,* 150 Ill. 362; *Allmon* v. *Rail-*

*road Co.* 155 id. 20; *Lyon* v. *Railroad Co.* 167 id. 531; *Chicago* v. *Lonergan,* 196 id. 525; *Railroad Co.* v. *White,* 166 id. 381; *Railroad Co.* v. *Milroy,* 181 id. 247; *Railway Co.* v. *Easterbrook,* 211 id. 624; *Railroad Co.* v. *Turner,* 194 id. 579.

General benefits, such as arise by making a better market or by affording conveniences for travel, cannot be set off against damages to contiguous property not taken. *Railway Co.* v. *Aldrich,* 134 Ill. 9.

A part of a quarter section laid out and platted into building lots is not contiguous property to another part of the same quarter section which contained cement rock capable of being manufactured into cement, in the sense that benefits which may accrue to said lots may be set off against damages to the cement lands. Lewis on Eminent Domain, sec. 475; *Koerper* v. *Railroad Co.* 42 Minn. 340; *Sheldon* v. *Railway Co.* 29 id. 318; *Railroad Co.* v. *Doran,* 15 id. 230; *Wilcox* v. *Railway Co.* 35 id. 439; *Cox* v. *Railroad Co.* 77 Iowa, 20; *Currie* v. *Railroad Co.* 52 N. J. L. 381; *White* v. *Railroad Co.* 154 Ill. 620; *Chicago* v. *Spoor,* 190 id. 340.

After a challenge to the array has been sustained to the original panel of jurors a court has no authority to designate by name another venire. 2 Starr & Cur. Stat. chap. 47, secs. 3, 6, 7; *Sweeney* v. *Chicago Tel. Co.* 212 Ill. 475.

When the weight of the evidence shows that the remaining lands will be damaged and no damages are assessed to them by the jury the case will be reversed. *Miller* v. *Sterling,* 198 Ill. 523.

DUNCAN, DOYLE & O'CONOR, for appellee:

In condemnation proceedings in vacation, when the panel is "exhausted by challenges," the court hearing the petition is authorized to designate, by name, the necessary number of persons of proper qualifications. Rev. Stat. chap. 47, sec. 7.

The judgment of the court below will not be reversed because a challenge to the array has been overruled unless it

appears that some substantial right of the defendant was thereby impaired. *Wistrand* v. *People,* 213 Ill. 77; *Henry* v. *People,* 198 id. 185; *Siebert* v. *People,* 143 id. 576; *Wilhelm* v. *People,* 72 id. 468; *Mapes* v. *People,* 69 id. 523; *People* v. *Madison County,* 125 id. 334.

The judge, as an individual, cannot exercise judicial powers. Condemnation proceedings in vacation are before the court, and not before the judge. *Bowman* v. *Railway Co.* 102 Ill. 467; *Leibengut* v. *Railway Co.* 103 id. 433; *Johnson* v. *Railway Co.* 111 id. 418; *Railway Co.* v. *Rixman,* 121 id. 214.

The owner of land sought to be taken in condemnation proceedings is entitled to receive therefor the actual fair cash market value of the land for the best uses to which it is adapted. *Phillips* v. *Scales Mound,* 195 Ill. 353; *Snodgrass* v. *Chicago,* 152 id. 600; *Railway Co.* v. *Brewing Co.* 174 id. 547; *Ligare* v. *Railway Co.* 166 id. 249; *Railway Co.* v. *Chicago,* 172 id. 198; *Railway Co.* v. *Milroy,* 181 id. 247.

Special benefits are such benefits flowing from the proposed public work as appreciably enhance the value of the particular tract of land alleged to be benefited. *Railroad Co.* v. *White,* 166 Ill. 378; *Wilson* v. *Board of Trustees,* 133 id. 443; *Bohm* v. *Railroad Co.* 129 N. Y. 576; *Rigney* v. *Chicago,* 102 Ill. 64; 2 Lewis on Eminent Domain, sec. 476; *Railroad Co.* v. *Stickney,* 150 Ill. 362.

The plat of Hartshorn's subdivision was properly admitted in evidence. It was a part of Hartshorn's land in the north-west quarter of section 13, all of which, up to the time of the trial, had always been used for agricultural purposes. The plat was filed in the recorder's office on the same day the petition in this case was filed in the circuit clerk's office. *Coal Co.* v. *Chicago,* 26 Fed. Rep. 415; *Schroeder* v. *Joliet,* 189 Ill. 48; *Osgood* v. *Chicago,* 154 id. 194; *Railroad Co.* v. *McDougall,* 126 id. 111; *McReynolds* v. *Railway Co.* 106 id. 152; *Railway Co.* v. *Freeman,* 210 id. 270; 2 Lewis on Eminent Domain, sec. 475.

When the testimony is conflicting and the jury view the premises, the verdict, if within the range of the testimony, will not be disturbed. *O'Hare* v. *Railroad Co.* 139 Ill. 151; *Guyer* v. *Railroad Co.* 196 id. 378; *Lanquist* v. *Chicago,* 200 id. 71.

Expert witnesses testifying to the value of real estate or giving opinions as to benefits or damages to the remaining land should be permitted to state their reasons or the basis of such opinions. 2 Lewis on Eminent Domain, secs. 436, 438; *Railroad Co.* v. *White,* 166 Ill. 375.

The burden of proof of damages to remaining land is on the owner. *Railway Co.* v. *Phelps,* 125 Ill. 482.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted that the court erred in the admission and exclusion of evidence. The witnesses introduced by appellee to prove the value of the land actually taken testified that the best use to which the land, in its then condition, was adapted was for railroad purposes, and gave their value accordingly. It is claimed by appellants that the land was best adapted to manufacturing purposes and was of no value to appellants for railroad purposes, and hence the admission of this evidence, taken in connection with the twenty-second instruction given on behalf of appellee, was, in effect, telling the jury that if they believed, from the evidence, that this fifty-foot strip, with the improvements thereon, was best adapted to railroad purposes they should so find, notwithstanding such value might be much less than for manufacturing purposes. Prior to the condemnation proceedings the land had never been used for manufacturing purposes, but for agricultural and pasture purposes. The petition for condemnation was filed on July 26, 1904. The strip sought to be taken was at that time in the possession of appellee by virtue of the sale to it by the Illinois Valley Traction Company, which had constructed and placed in operation its line of rail-

way over the strip, and hence at that time the strip was being used for railroad purposes.

Under the law, appellants were entitled to the highest fair cash market value of the land actually taken, for the best use to which it was adapted. (*West Chicago Street Railroad Co.* v. *City of Chicago,* 172 Ill. 198.) Its best use was to be ascertained from the evidence. The appellants had the right to show the value of the land for the best use to which they thought it was adapted and the appellee to show the best use to which it thought the premises were adapted. The jury were entitled to inspect the land and form their judgment from such inspection, and from all the evidence offered determine what was the best use to which the land was adapted, and what was its fair cash market value for that use. (*Phillips* v. *Town of Scales Mound,* 195 Ill. 353; *Ligare* v. *Chicago Madison and Northern Railroad Co.* 166 id. 249; *Rock Island and Peoria Railroad Co.* v. *Leisy Brewing Co.* 174 id. 547.) It was not the duty of appellee to call upon appellants and ask them to state the use to which they thought their lands best adapted, but it was the privilege of appellee to produce such proper testimony with reference to that use, and the price thereof, as it saw fit. Appellee claimed the land was best adapted, in its then condition, for railroad purposes, and appellants claimed it was best adapted for manufacturing purposes. Evidence in support of both of these conditions was admitted and was competent.

It is next contended that the court erred in the admission of evidence as to the amount of benefit or damage to the lands not taken. It is claimed that certain witnesses were permitted to testify from experience in the coal mining business, or from experience as president of a cement company, or from experience in handling men, or from knowledge of the location of the ground, whether the building of the road would be a benefit or an injury to the factory site, and they testified that it was a benefit, but they could not estimate that benefit in dollars and cents. It is insisted that the proper rule

as to benefits or damages to land not taken is the difference in the fair cash market value of the land before and after the taking, and that the evidence complained of was not based upon that value, but upon other facts and circumstances.

There can be no doubt that the rule as to the benefits or damages to land not taken is as above claimed by appellants. (*City of Chicago* v. *Lonergan,* 196 Ill. 518; *Illinois, Iowa and Minnesota Railway Co.* v. *Easterbrook,* 211 id. 624.) We think, from a careful examination of the evidence and the instructions of the court given upon both sides, that this was the rule adopted by the court. No less than eleven instructions were given on either side stating the measure of damages to be the difference between the actual fair cash market value of the land as it was before the construction of said railroad, and its actual fair cash market value after the construction of said railroad. Appellants assert that the remaining lands are especially adapted for factory sites. They are located at a distance from any populous center. The question of securing proper freight accommodations and transportation for employees would certainly be of importance in case factories were located thereon. At the time the case was tried a line of electric railroad was operated over the land, and was clearly an element to be taken into consideration in the estimation of damages or benefits. The evidence complained of was based upon this fact, and we think it was proper for the consideration of the jury.

It is next insisted that the court improperly admitted in evidence the plat of Hartshorn's subdivision of lands located near the right of way. On the same day the petition for the condemnation was filed appellant Hartshorn filed in the office of the recorder of deeds of LaSalle county a plat of his subdivision of a part of section 13. The petition for condemnation stated that said Hartshorn was the owner of the land subdivided. Hartshorn filed his cross-petition, in which he admitted that he was the owner of the land subdivided and prayed for the assessment of damages to all lands therein de-

scribed, thereby including the land subdivided. After Hartshorn had testified to being the owner of this land in section 13, upon cross-examination he was asked if he had not subdivided a part of it. Objection was made to this question, which was overruled by the court, and the plat of the subdivision was offered in evidence, together with certain deeds of conveyance of lands in the subdivision as platted. Thereupon Hartshorn asked permission to amend his cross-petition by eliminating the lands subdivided, and thereby releasing any claim for damages to that land. The court granted the motion, and thereupon the appellee amended its petition by alleging that the land subdivided was one compact, entire tract and used by the owner thereof as an entire tract for agricultural purposes, together with other lands for which damages were sought. It is insisted by appellants that as the original cross-petition claimed no damages to any lands in section 13 except those containing Portland cement rock, and as the amendment to the cross-petition was filed for the purpose of doing away with any possible doubt upon that question, the admission of the plat in evidence was error. It appears from the evidence that all of the land surrounding this proposed right of way was contiguous and used by Hartshorn for agricultural purposes. The lots were subdivided and the plat filed for record on the same day the petition for condemnation was filed. While it is claimed that the lots were platted with the expectation that this interurban track would be removed, we cannot see how that can be true. The subdivision shows the railroad track. The lots were located some distance from any populous center, in an agricultural district. They could only be bought and sold with the expectation that they would be along the car track, so purchasers might easily get to and from their homes, and would thereby be increased in value and benefited by the condemnation. For this reason evidence of the subdivision was properly admitted.

The appellants contend that the taking of the fifty feet in question would deprive them of switch-track connections

216–26

with the Rock Island railroad, and in support of this contention offered evidence showing that when the sand company was contemplating the purchase of the land from Hartshorn, one condition upon which that purchase was made was the acquirement of switch-track connections with the Rock Island railroad. Accordingly, the officials of the sand company interviewed the officials of the Rock Island railroad for the purpose of making an agreement in regard to the switch. It was claimed by the Rock Island officials that on account of the tunnel it would be too dangerous to connect a switch with the main line at a distance of less than three thousand feet west of the tunnel, and that no part of this three thousand feet could be on the right of way of the railroad. A letter containing this statement was offered in evidence by appellants. In rebuttal of this letter the court permitted appellee to introduce evidence showing that fifteen years prior a switch track had been placed on the right of way of the Rock Island company, connecting with the main line seventeen hundred and sixty-two feet west of the tunnel, for the purpose of shipping clay from the land now owned by the sand company. It is insisted by appellant that the admission of this evidence was error. The question at issue was whether or not appellants would be damaged by building the road by reason of being deprived of switching facilities. The written refusal of the railroad company to build the switch not less than three thousand feet was offered to show that appellants would be specially damaged. In rebuttal of this evidence appellee offered evidence to show that just such a switch had been in that particular place fifteen years before and could be put there again. This evidence was proper to be considered by the jury in determining the amount of appellants' damages in this respect.

The petition in this case was presented in vacation to Judge Charles Blanchard, who made an endorsement thereon as to the date of the return of summons. The summons was issued, and also a venire for the jury. When the case

came on to be heard Judge Blanchard was ill, and Judge Richard M. Skinner, of the same circuit, presided. Appellants challenged the whole array of jurors on the ground of certain alleged incompetency. The challenge was sustained and the jurors discharged. Thereupon Judge Skinner designated by name twelve men to act as jurors, and appellants challenged this array on the ground, first, that the petition had been presented to Judge Blanchard and Judge Skinner was without authority to issue the new venire; second, the petition not having been presented to Judge Skinner he was without authority to order the venire; third, the law did not authorize the judge to designate the persons for whom a venire should issue. This challenge was overruled, and the ruling is assigned as error. It is claimed that it is the well established rule that when the power of eminent domain is sought to be exercised and the property of the individual taken against his will, such proceedings must strictly comply with the provisions of the statute, and the presentation of the petition in vacation and the summons of the jury must also be in strict compliance with the statute, and that Judge Skinner had no authority to call a new venire of jurors, and that no such power existed under the Eminent Domain act.

Section 3 of the Eminent Domain act (Hurd's Stat. 1903, chap. 47, p. 909,) provides: "If such petition be presented to a judge in vacation the judge shall note thereon the day of presentation, and shall also note thereon the day when he will hear the same, and shall order the issuance of summons to each resident defendant, and the publication," etc. Section 6 of the same act provides that it shall be the duty of the court, at the time of the issuing of summons or making publication, to write the names of sixty-four disinterested freeholders on separate slips of paper, and in the presence of two disinterested freeholders select twelve persons to serve as jurors. Section 7 of the same act provides that if the panel be not full, by reason of non-attendance or be exhausted by challenges, the judge hearing such petition shall designate

by name the necessary number of persons of proper qualifications to serve as jurors.

In the case of *Bowman* v. *Venice and Carondelet Railway Co.* 102 Ill. 459, in passing upon this statute, we held that courts are political agents established under the constitution, and in contemplation of law have separate existence distinct from the judges who preside over them; that a judge has no judicial power outside of the court in which he officiates, and when discharging the functions of his office he is the court in concrete form, and in this sense is often called the court, but, strictly and technically speaking, the judge and court are wholly distinct; that a condemnation proceeding can only be instituted and conducted in the circuit court or the county court, and whether instituted in vacation or term time it is equally a proceeding in court. To the same effect are many other decisions of this court. (*Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 Ill. 491; *St. Louis and Cairo Railway Co.* v. *Postal Telegraph Co.* 173 id. 508.) In the latter case we said (p. 514): "While it is true that the act makes use, in several of its sections, of the expression 'judge or court,' yet it was not the intention of the act to provide two tribunals for the hearing of condemnation cases,—one the judge, as an individual, and the other the court, as a judicial tribunal. The judge cannot exercise judicial power except when sitting as a court, and not as an individual. Whether the proceeding be in vacation or term time, it is a proceeding in court." The petition was first presented to Judge Blanchard. On account of sickness he was unable to preside at the trial and Judge Skinner was called. The acts of both were not in their individual capacity as men or as judges, but were the acts of the circuit court. Upon the challenge to the array being sustained it placed the proceeding in substantially the same position as if no venire had been issued, and the proper practice would have been to issue a new venire in the same manner as the first one had been issued.

But even if this were not true, we do not see that appellants have any cause for complaint, as no attempt has been made to show any injury from the court's action. The appellants do not claim that the jury before whom the case was tried were prejudiced against them, or that they were not fair-minded men and of sufficient intelligence to faithfully and intelligently discharge their duty as jurors, but, on the other hand, the jury seem to have been satisfactory to them, as they exhausted only one-half of their peremptory challenges in their selection. We have frequently held that the judgment of the court below will not be reversed because a challenge to the array was overruled unless it appears that some substantial right was thereby impaired. *Siebert* v. *People,* 143 Ill. 571; *Henry* v. *People,* 198 id. 162; *Wistrand* v. *People,* 213 id. 72.

Complaint is next made of the twenty-second and twenty-ninth instructions given by the court on behalf of appellee. Both of these instructions lay down the rule for the assessment of damages and benefits, and, taken in connection with all of the other instructions, we think the jury were fully informed as to the measure of damages and appellants were not injured thereby.

It is next insisted that the damages awarded by the jury were grossly inadequate. It was contended by appellants that the lands taken were particularly adapted for manufacturing purposes, and their measure of damages was based upon this fact. The evidence shows that the lands had never been used for manufacturing purposes but had always been used for agricultural purposes. Evidence was also offered by appellee that the best use to which the land could be put in its then condition was for railroad purposes. The amount of damage for these different purposes must necessarily vary considerably. In a prior condemnation case the jury found that the total damage was $526; in this case the jury found that the damages were $3400. It was a question for the determination of the jury, and we cannot see from the evidence

that the jury so far made a mistake as to reverse the case, but, on the contrary, we are of the opinion that the damages given are substantially in accordance with the weight of the evidence.

There are several other grounds of objection urged by appellants, but upon a consideration of the whole case we find no reversible error, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*