MANTORVILLE RAILWAY & TRANSFER COMPANY v. TEUNIS SLIN-GERLAND.[1]

July 12, 1907.

Nos. 15,148—(137).

**Eminent Domain—Special Benefits.**

Special benefits may be set off, in proceedings to condemn a right of way for a railroad company, against the value of the part taken and damages shown to have accrued to the remainder.

**Special Benefits.**

The term "special benefits," as used in condemnation of railway right of way, has the same meaning and is governed by the same principles as when employed in highway, drainage, or ordinary municipal improvement proceedings only in so far as private property is taken for public use by such proceedings.

**Same.**

In other cases, the identity of meaning and principles is to be determined with due reference to distinctions with respect to the exaction of payment as a condition precedent to subsequent use of railway facilities only, to the natural difference in accessibility to the improvement, and to

[1] Reported in 112 N. W. 1033.

the judicial nature of proceedings to condemn, as distinguished from the administrative character of ordinary local improvement assessments.

**Same.**

Such benefits must be pro tanto a fair equivalent for land parted with and the damages inflicted. To that end they must be special, not common ; direct, not consequential ; substantial, not speculative ; .proximate, not remote ; actual, and not constructive.

**Same.**

The usual beneficial results of the mutually advantageous arrangement between a state and a railway company having the right to exercise the power of eminent domain are not special benefits.

**Same.**

Mere increase in facilities of transportation does not amount to a special benefit.

**Same.**

A railroad in this case constructed its line over land, some of which was taken for use as a part of its right of way, along the only feasible route to reach stone quarries. The land without the road was of no immediate value for commercial or quarrying purposes ; but with the road was possibly of considerable value for such purposes. It is *held* that such value was not a special benefit.

In the matter of proceedings instituted by plaintiff corporation · in the district court for Dodge county to condemn a right of way across the land of defendant commissioners were appointed, and they appraised his damages at $575. From their award both plaintiff and defendant appealed, and the appeals were tried before Buckham, J., and a jury, which assessed his damages at $1,050. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*G. A. Norton* and *Samuel Lord,* for appellant.

*Bunn T. Willson* and *Chas. C. Willson,* for respondent.

JAGGARD, J.

In 1896 the plaintiff and appellant railway company, on notice to defendant and respondent, presented its petition to the district court, describing the route of its proposed railroad and the land of defendant it desired to appropriate, and asked the appointment of three commissioners to appraise damages. The commissioners, duly appointed, appraised defendant's damages at $575, and in 1896 filed their report. Both parties appealed from the award. The company gave the statutory

bond, took possession of the land, and constructed its railroad over it. The proceedings on appeal were continued from time to time until 1906, when they were tried. The jury returned a verdict in favor of defendant for $1,050. This appeal was taken from an order of the trial court denying plaintiff's motion for a new trial.

The assignments of error are addressed to the rulings of the trial court in excluding evidence of special benefits to the land, due to the facts that the road was constructed along the only feasible route to reach two stone quarries on defendant's premises, part of which premises were taken for the right of way, and that without the road the lands were of no value for quarrying or commercial purposes, but with the road, constructed as it was, the quarries were worth over $1,500. The defendant insists that this testimony was directed to show the value of the two stone quarries on his premises, both of which were opened and operated at a time long subsequent to the commencement of these proceedings, the taking of the lands, and the construction of the road by the company, and that the testimony did not tend to show benefits to the defendant's land at the time at which such benefits are to be determined according to law. Sherwood v. St. Paul & Chicago Ry. Co., 21 Minn. 122; Warren v. First Division St. P. & Pac. R. Co., 21 Minn. 424; Whitacre v. St. Paul & S. C. R. Co., 24 Minn. 311. See, however, Morin v. St. Paul, M. & M. Ry. Co., 30 Minn. 100, 14 N. W. 460; 18 Cent. Dig. "Eminent Domain," §§ 325-402. Construing the assigments of error and the record on which they are based with the liberality required by current appellate practice, we are of the opinion that the appeal is sufficient to present the merits of the controversy.

The essential question upon the merits is whether the court erred in holding that there were no special benefits available as a set-off shown or offered to be shown in this case. Plaintiff's argument upon the facts was that defendant's lands, having stone quarries upon them, must have been specially benefited by the building of a railroad across his property so near to the quarries that they could be easily reached. While it recognizes that at the time of taking the lands the railroad could not have been compelled to build a spur track, this, it insists, did not deprive the road of the right to deduct the value of the special benefit. "Railroads are built, among other things, to carry freight. Stub roads * * * are built, as a rule, for the very purpose of reach-

ing quarries, factories, mills, mines, and the like. And the fact that they are built for such purposes makes it reasonably certain that they will furnish necessary connections and switches."

In support of and in opposition to this contention we are referred to many decisions, which counsel for the respective parties have collated with industry and classified with ingenuity. These decisions, the authorities therein referred to, and others which we have examined, reproduce many shades of opposing opinion. Frequently little heed has been paid in these opinions to the nature of the proceeding under which the question has arisen and to the subject-matter to which the benefits pertained. Much of their lack of harmony is due, also, to the failure to observe the varying rules adopted by the various jurisdictions with respect to whether either, neither, or both general and special benefits may be used as a set-off, and whether such counterclaims avail as to either, neither, or both the value of the part taken and damages to the remainder. There is observable in these authorities a general inclination to deduce the rule from the term "special benefits," and to treat that phrase as if it were feasible from it to determine, a priori, by reasoning of mere nominalists, how the owner of property shall be compensated for what part of his estate has been taken by power of law. Under the circumstances it is desirable (1) to distinguish between the varying proceedings and subject-matter involved in each, respectively; (2) to advert to fundamental principles, and to note the pertinent rules of law adopted in different jurisdictions; and (3) to reach a conclusion in this case with regard, not to the phrase "special benefits," but to the substance of the actual conditions of fact presented by this record.

1. The term "special benefits" is used indiscriminately, as if its meaning were identical in cases of judicial highways and ditches, assessments for local improvements, and in condemnation proceedings. There are, however, substantial, but neglected, distinctions arising from the nature of these proceedings and the subject-matter to which they apply. The primary basis of distinction is that in condemnation proceedings only is part of the land invariably taken by eminent domain. It may or may not happen that highway, drainage, or municipal improvements include this exercise of that sovereign power of the state. It is only when this occurs that the term "special benefits" has exactly the same meaning, and that the identical principles apply to it as when

employed in proceedings to condemn a right of way by a railway company. See Arbrush v. Town of Oakdale, 28 Minn. 61, 9 N. W. 30.

Another distinction is this: Of these cases, a railway company only secures lands for a public use for which the public is subsequently required to pay. When abutting property is charged for the construction of a sewer, a street, a sidewalk, a drain, or a ditch, or when property within a district is assessed for a park, a boulevard, a fill, or the like, no subsequent charge is made for use. It is true, however, that a water frontage assessment may be levied and a subsequent water rate be collected for water furnished; but even here no direct charge is made for incidental fire protection.

Another distinction is to be found in the accessibility of the improvement. When, for example, a street is opened through a man's property, he has, subject to reasonable regulation, instantaneous and immediate access to and egress from his property at every part of the street. Practically every other municipal improvement, and judicial highways and ditches, confer upon abutting owners similar privileges. In all such cases the right so conferred may be enforced by process. When a railroad, however, is constructed through a man's property, he may or may not have access to it at particular places. It is a question in the first place of statutory provision, and in the second place of fact, whether he can secure the exercise of discretion on the part of public officers in ordering the construction of a spur track, the furnishing of switch connections, or the location of a station. Under no circumstances is his privilege in this regard at all analogous to the complete, if not absolute, right of property owners to enjoy municipal improvements for which they have been assessed.

The final distinction is this: The ordinary local assessments are made by the administrative branch of the government, and the rights of the court to control them are limited in the extreme. The emphasis placed on the power of the executive to determine questions of benefits which may be charged to property owners, entirely free from judicial interference, which was given by the decisions of the federal supreme court, practically overruling Village of Norwood v. Baker, is recent and impressive. Condemnation proceedings and the current drainage and highway proceedings are judicial. It is accordingly within the power of the courts in such proceedings, in a measure at least, to prevent the practical confiscation of private property by a mere resolution of

an official or of an official body, determining that a given improvement has conferred special benefits upon the owners thereof in an amount found. This the executive branch of the government has the power to do; and, as sad experience shows, this power it constantly exercises. The courts, under the doctrine in force at present, may relieve in extreme cases only, if at all. French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879. In judicial proceedings, however, a consistent and a visible effort has been made to prevent plunder of landowners through the device of merely constructive benefits. Swenson v. Board of Supervisors, 95 Minn. 161, 103 N. W. 895. The analogy of the judicial highway and ditch proceedings may accordingly be somewhat closer to railway condemnation than that of the ordinary local assessment.

We conclude that "special benefits," as defined in these allied proceedings, bears an analogy to "special benefits" in railway condemnation proceedings, but an analogy which is often remote, and which is likely to be misleading. The authorities of this kind to which we have been referred by plaintiff do not aid in the solution of the present problem. It is unnecessary to discuss them in detail.

2. The various courts, starting with essentially the same premises, have reached very different rules for the determination of what is a special benefit in railway condemnation proceedings, and have varied still more in the application to the facts presented of the formulæ which they have adopted. The common premises are the constitutional provisions of which those of this state are typical. Private property "shall not be taken * * * for public use without just compensation." Section 13, art. 1, Const. (Minn.) "In all cases, however, a fair and equitable compensation shall be paid for such land and the damages arising from the taking of the same." Section 4, art. 10, Const. (Minn.) Under similar constitutional provisions, it is the law of many jurisdictions that the land taken must be paid for in money, and cannot be paid for in mere "benefits." The argument in that connection is nowhere better stated than by Wilson, C. J., dissenting, in Winona & St. P. R. Co. v. Waldron, 11 Minn. 392, 418 (515), 83 Am. Dec. 100: "If the legislature has the right, under our constitution, to say that a party may be compensated for his land taken for public use in 'benefits,' it may also say that he may be compensated in oxen, sheep, provisions, or

tobacco, or in any other useful or useless thing. Either they have no power, or unlimited power, to designate the currency or commodity in which payment may be made. To my mind it seems clear that the constitution, properly interpreted, gives them no power in the premises. When the public or a corporation takes the property of an individual, it becomes indebted to him for its value, and should pay that debt in that which, by the law of the land, would be deemed a lawful tender in payment of any other debt."

Quite generally, however, courts have recognized the propriety of allowing benefits conferred as a set-off. Mr. Lewis has thus arranged the different jurisdictions with respect to the rule in force in each respectively:

"1. Where special benefits may be set off against damages to the remainder, but not against the value of the part taken.

2. Where benefits, whether general or special, may be set off as in the last proposition.

3. Where special benefits may be set off against both damages to the remainder or the value of the part taken.

4. Where both general and special benefits may be set off as in the last proposition."

The decisions of this state put it in the third of these classes. Lewis on Eminent Domain, p. 1000, § 465.

With respect to the nature of the benefit which may be used as a set-off, there is a general concensus of opinion that the benefit must be pro tanto a fair equivalent for the land parted with and the damages inflicted. Various adjectives are currently used to define the character of these benefits. They must be special, as distinguished from common (Weir v. St. Paul, S. & T. F. R. Co., 18 Minn. 139 [155]; 18 Cent. Dig. Em. Dom. § 390, et seq.; 7 Current Law, 1294); actual, as distinguished from constructive (Swenson v. Board of Supervisors, supra); substantial, as distinguished from speculative (Whitely v. Mississippi W. P. & Boom Co., 38 Minn. 523, 525, 38 N. W. 753; Haynes v. City of Duluth, 47 Minn. 458, 50 N. W. 693; Metropolitan v. Stickney, 150 Ill. 362, 37 N. E. 1098, 26 L. R. A. 773); direct, as distinguished from consequential (18 Cent. Dig. Em. Dom. § 390); and proximate, as distinguished from remote (Jeffersonville v. Esterle, 13 Bush [Ky.] 667). These terms represent particular aspects of facts in issue and serve to show the uniform intention of the courts to prevent the violation of the

constitution by taking a man's land without pay by mere equivocation and to actually pay him for what he has parted with and for what damage he has suffered.

. In order that it should be, in any literal sense, practical compensation, the benefit must be peculiar to the individual, part of whose land has. been taken, and not such as accrues to adjacent landowners generally. What advantage has been received by other owners whose lands have not been taken could, by legal juggling only, be considered as payment for lands segregated for railway use. For example, suppose that a railway running through an open country would take part of lands of one set of owners, including, as the chance might be, all improvements of value. Other sets of owners would receive the same general advantages accruing from increased facilities for transportation. All would profit, but only the first set would pay; for their property would be appropriated and paid for in part by the consequent increase in value which others would receive gratis. "One pays for the other's 'benefit.'" Guinn v. Ohio, 46 W. Va. 151, 157, 33 S. E. 87, 76 Am. St. 806. See Cooley, Const. Lim. 570; note to Symonds v. Cincinnati (14 Ohio, 147) 45 Am. Dec. 533.

The common benefits from the construction of a railway are the natural sequences of a mutually advantageous arrangement. A railway company is given by the state the right to exist, to enjoy the usual corporate powers, to exercise the extraordinary and sovereign power of eminent domain, and to charge toll for the services it may render to· the public. Incidentally in this state it is exempt from ordinary taxation. The railway profits by the exercise of these powers and privileges in the collection of its authorized charges; the public, by the privilege of buying improved transportation at uniform and reasonable rates. That railway company property and stock increase in value, and that the community through which the railway passes finds its lands made more valuable and its prosperity increased, is the accomplishment of the very purposes for which the sovereign state conferred these franchises and privileges upon corporations of this class. It makes no difference whether the advantage to landowners consists in providing an immediate market for their products, agricultural, mineral, or manufactured; or in transporting them to remoter markets. The farmer, who sells grain, hay, stock, or dairy products, the quarryman, who sells building stone or ballast, and the merchant or manufacturer, who may or who may not

own land, but whose business is made or increased, share in a common advantage which is their lawful due. Increased facilities for transportation of natural products at reasonable rates are not in logic legal tender for part of lands of private owners taken under power of eminent domain and for damages to the remainder.

. A tangible estimate of the value of such facilities is in the increased value of the land. Any other means of determination would be speculative in the extreme. It is well settled, beyond dispute, that enhancement of value of land standing alone is not a special benefit. A benefit is special, by any reasonable construction, only when the road is so constructed as to give the land in question an increased value above the general appreciation of property in the neighborhood. Mere general appreciation, consequent on projected or actual construction of the road, cannot, in any view of the case, be set off against damages for the taking of the land; and this is the rule even in Pennsylvania. Mahaffey v. Beech Creek, 163 Pa. St. 158, 29 Atl. 881. And see Mississippi v. McDonald, 59 Tenn. 54; Southern Illinois v. Stone, 194 Mo. 175, collecting cases at page 188, 92 S. W. 475; Tracewell v. County, 58 W. Va. 283, 52 S. E. 185, 187.

The logic of the situation has led many courts to insist that benefits, to be used as a set-off, in order that they may be special, must alter the physical character of the land. "The benefits to be deducted must be those resulting directly to the land, a part of which is taken, from the construction of the road, not through the vicinity, but through the land." McMillan, J., in Winona & St. P. R. Co. v. Waldron, 11 Minn. 392, 413 (515), citing many cases. "The benefits to be considered and allowed by the jury, where only a part of an entire tract is taken, are not such as are common to lands generally in the vicinity, but such as result directly and peculiarly to the particular tract in question; as, for instance, where property is made more available and valuable by opening a street through it, or when land is drained or otherwise directly improved." Vanderburgh, J., in Whitely v. Mississippi W. P. & Boom Co., 38 Minn. 523, 525, 38 N. W. 754. The benefit must result from the construction, and not from the location, of the railroad. State v. Evans, 3 Ill. 208. "A benefit which may thus be allowed is one which enhances the value of the land affected by it, by improving its physical condition and adaptability for use, such as by reclaiming waste land,

by draining or flowing a marsh, by aiding in the development of a water power, by dispensing with the necessity of maintaining fences [which is not the law in Minnesota], or by opening a mine or quarry, and the like." Washburn v. Milwaukee, 59 Wis. 365, 377, 18 N. W. 328, 334.

The conclusion of Mr. Pattison, in his excellent article on "Eminent Domain" in 15 Cyc. at page 771, is: In order that the benefits may be deducted, they must be special and local, and such as result directly to the particular tract of land of which a part is taken. Among the familiar illustrations of such local benefits are: The drainage of lands (Old Colony v. Miller, 125 Mass. 1, 28 Am. 194); the filling up of an old canal (Whitman v. Boston, 3 Allen [Mass.] 133); access to a pond for cattle and ice (Fitz v. Nantasket, 148 Mass. 35, 18 N. E. 592; cf. Paine v. Woods, 108 Mass. 160, 166); the formation of a mill pond by the construction and maintenance of a necessary embankment (Sullivan v. North Hudson, 51 N. J. L. 518, 18 Atl. 689); a periodical flooding, likely to add alluvium and enrich land (Milwaukee v. Eble. [Wis.] 4 Chand. 72; s. c. 3 Pin. 334); construction of a main sewer, making proper drainage of the property traversed less expensive (Butchers v. Com., 169 Mass. 103, 119, 47 N. E. 599; Trinity College v. City, 32 Conn. 452, 477).

In the light of these considerations, we come to view the specific cases to which plaintiff refers us to the effect that increased transportation facilities and the feasibility of connecting industrial works upon the tract with the road are "special benefits." Of these Reading v. Balthasar, 126 Pa. St. 1, 9, 17 Atl. 518, is especially apt. There a quarry had been opened at a time when a canal was the only available line for its products. The defendant railway company built a road to and across plaintiff's lands. It was held that whether this additional line of transportation was or was not an advantage to the owners of the quarry was a proper subject for consideration by the jury. Therefore the true inquiry was whether a broader market and better facilities for shipment were put within plaintiff's reach by the building of defendant's road, or, in other words, whether there were advantages to be set off against the disadvantages arising from the appropriation of the plaintiff's land for the right of way of the road. So the courts have found special benefits to consist of increased transportation facilities for marketing coal (Chicago v. McGrew, 104 Mo. 282, 290, 15 S. W.

101 M.—32

931); in connection with a mill for the reduction and treatment of ores (Colorado v. Humphrey, 16 Colo. 34, 26 Pac. 165); in connection with future manufacturing enterprises (St. Louis v. Fowler, 142 Mo. 670, 680, 44 S. W. 771; cf. St. Louis v. St. Louis, 120 Mo. 541, 25 S. W. 399); in connection with a situation resulting in the conversion of ordinary land into factory sites (Hartshorn v. Illinois, 216 Ill. 392, 75 N. E. 122).

A number of considerations serve to subtract from the apparent weight of this class of authorities. With respect to the Pennsylvania cases, it is to be noted, as Mr. Justice Gordon said in Pittsburgh v. Robinson, 95 Pa. St. 426, 431: "It is conceded that, under our acts of assembly, the owners of mills and manufactories may of right connect their private sidings with the railroads in their vicinity, and though, as the counsel for the defendants in error says, it does not follow that such owners may ever avail themselves of such right, nevertheless the fact that such a right exists in them may largely advance the market value of their several properties. Certainly privileges which may be used to facilitate transportation to and from large factories must have some effect upon their values." No such right existed in Minnesota. While the definition of special benefits formulated in Pennsylvania has been essentially the same as in this state (see Hornstein v. Atlantic, 51 Pa. St. 87; Long v. Harrisburg, 126 Pa. St. 143, 19 Atl. 39), none the less, as Mr. Gould has pointed out: "The measure of damages laid down in these cases would seem to permit general benefits to be set off." 2 Gould, Em. Dom. 1010, note 17. The New York elevated road cases are not in point, because the rule applicable thereto is that, in estimating benefits resulting from the construction of such a road, not only those peculiar to the premises, but also those shared with neighboring property, should be considered. Saxton v. New York, 139 N. Y. 320, 34 N. E. 728; cf. Peabody v. Boston, 191 Mass. 513, 78 N. E. 392.

Plaintiff also argues from cases which hold that the building of a station near a tract of land confers a special benefit. Shattuck v. Stoneham, 6 Allen (Mass.) 115; Bohm v. Metropolitan, 129 N. Y. 576; Nette v. New York, 1 Misc. 342, 20 N. Y. Supp. 627; Pittsburgh v. Robinson, supra; cf. City of El Paso v. Coffin (Tex. Civ. App.) 88 S. W. 502. A number of circumstances, part of which are elsewhere herein referred to, peculiar to the individual cases, serve to distinguish these

authorities more or less clearly from the instant case. In Massachusetts it has been held that, before the station has been in fact established, it could not be determined whether the benefits were of a sufficiently certain character to affect the damages. Brown v. Providence, 5 Gray, 35, 39. The opinion that the building of a station or of an elevator is not a special benefit, which is that of this court (Minnesota Cent. Ry. Co. v. McNamara, 13 Minn. 468 [508]), is the rule also in Illinois (Illinois v. Borms, 219 Ill. 179, 76 N. E. 149), and in Wisconsin (Washburn v. Milwaukee, 59 Wis. 364, 376, 18 N. W. 328). A number of cases tending to support plaintiff's claim are distinguishable, because the set-off was allowed against damages by inconvenience, or incidental damages only. Chicago v. Rottgering, 83 S. W. 584, 26 Ky. L. 1167. And see Union v. Raine, 114 Tenn. 569, 86 S. W. 857. Others, because of the peculiarity of statutory provisions or ordinances. St. Louis v. Fowler, 142 Mo. 67, 44 S. W. 771 (where, under a statute in force at the time of trial, the owner had a qualified right to switching connections). Others, because of the statutory definition of benefits. Colorado v. Humphrey, 16 Colo. 64, 26 Pac. 165; cf. Sexton v. N. Inhabitants, 116 Mass. 200, 206. Drury v. Midland, 127 Mass. 571, 582, expressly does not decide that evidence as to the feasibility of putting in a side-track on petitioner's land was admissible.

While the cases which are inconsistent with defendant's position may be distinguished more or less clearly from the case at bar, it must, however, be recognized in candor that many of them lend support to plaintiff's contention, and that the defendant can prevail in this case only by disagreeing with them in some measure. As has been pointed out, however, we think that on principle the mere increase of transportation facilities and the prospective feasibility of connecting industrial works upon the tract with a railroad are not ordinarily sufficient to constitute special benefits, at least where the landowner cannot by law compel the railroad company to furnish him with particular facilities.

The more nearly specific authorities agree with the general trend of decisions, previously referred to, in enforcing this rule. We are referred to Russell v. St. Paul, M. & M. Ry. Co., 33 Minn. 210, 22 N. W. 379, as being an authority to the contrary. There is no force in this contention. In that case Vanderburgh, J., said: "The only question is the amount of plaintiff's damages, being in this instance the value of the

lot in controversy." No question as to benefits, general or special, was there involved. On the contrary, the following advantages have been held not to be proper matter for set-off: The removal of a cemetery (Minnesota Cent. Ry. Co. v. McNamara, 13 Minn. 468 [508]); providing a market for wood or ties (Minnesota Valley R. Co. v. Doran, 17 Minn. 162 [188]); building fences along the right of way (Trogden v. Winona & St. P. R. Co., 22 Minn. 198). In Arbrush v. Town of Oakdale, 28 Minn. 61, 9 N. W. 30, this court said, per Mr. Justice Clark, that the only advantages and benefits which can be used as a set-off are such as "are direct and special to the land a part of which is taken. The kind of benefit which is not allowed to be estimated for the purpose of being deducted from the damages is that which comes from the claimant's sharing in the common convenience of increased public facilities and the general advance in value of real estate in the vicinity by reason thereof. Allen v. City of Charlestown, 109 Mass. 243.' "

So in other jurisdictions it has been held that a special benefit is not made out by the fact that the construction of a railroad opened a market for the owner's coal and wood (Railroad v. Foreman, 24 W. Va. 662); or that it enabled the shipment and sale of adjacent trees (Haislip v. Wilmington, 102 N. C. 376, 8 S. E. 926), which are suitable for ties (Childs v. New Hampshire, 133 Mass. 253). In Romano v. Yazoo, 87 Miss. 721, 40 South. 150, it was held: In an action for damage to property by the construction and operation of a switch track in front of it, evidence of the enhanced value of that property for warehouse purposes by reason of the building of the track was not admissible; the property not being used for such purpose. And see Guinn v. Ohio, 46 W. Va. 151, 157, 33 S. E. 87, 76 Am. St. 806.

3. In the case at bar the possibility or the probability that the railroad company would construct or maintain stub tracks or permit switch connections, whereby defendant's quarries would make his land valuable, is not a special benefit to be offset against the value of the part of his land taken by the railway company or damages to the remainder. That benefit accrued to the community in general. It was such a benefit as defendant might have received if the railroad had been constructed through the country, but had not crossed his farm. See Carli v. Stillwater Co., 16 Minn. 234, 241 (260); Winona & St. P. R. Co. v. Waldron, 11 Minn. 392 (515), 83 Am. Dec. 100. If, for example, the rail-

road company had run along the boundary line of his neighbor's land, that neighbor would have had identical advantages and would have paid nothing. The defendant is not required to pay in part for the same thing which his neighbor received gratis. The benefit was not direct nor local. The construction of the road did not physically alter defendant's lands to his advantage. It did not open a quarry, as by making a cut and exposing the stone. In this connection it is to be noted that this entire section of the state is underlaid with limestone, whose value is largely determined by its quality. A quarry is not so common as a field, but is of so frequent occurrence that the benefit of transportation facilities accrues to property owners quite generally and is highly uncertain, if not speculative. The benefit was contingent, and dependent upon the right of the railroad company to permit or refuse direct connection with it. Indeed, it might never accrue in fact. If it existed at all, the benefit was constructive, not actual. Any use the landowner might make of any spur track or switch connection would be "merely permissive, and subject to the paramount right of the railroad corporation." See Old Colony v. Miller, 125 Mass. 1, 5, 28 Am. 194; Ranlet v. Concord, 62 N. H. 561. It would be an unjust discrimination against this landowner to require him to pay for the privilege of paying the plaintiff for the transportation of his freight. The trial court was clearly right.

Order affirmed.